UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 19-24441-CIV-ALTONAGA/Goodman

C.W., a minor, by and through her
father, natural guardian and next
Friend, F.W.

       Plaintiffs,

vs.

NCL (BAHAMAS) LTD., a
Bermuda corporation d/b/a
NORWEGIAN CRUISE LINES,

       Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, NCL (BAHAMAS) LTD., d/b/a NORWEGIAN CRUISE LINE ("Norwegian"), by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure and Local Rules of the United States District Court for the Southern District of Florida, hereby files its Motion to Dismiss Plaintiff's Complaint [D.E. 1], with prejudice, and states:

## INTRODUCTION

This is a maritime, personal injury action in which Plaintiff, C.W., a passenger on Defendant's vessel the Norwegian *Pearl*, alleges that she was assaulted by passenger Shawn Lu.

Plaintiff's Complaint alleges the following claims against Norwegian: Negligence – Vicarious Liability (Count I); Negligence – Direct Liability (Count II); Fraud by Concealment (Count III); and Negligence Per Se (Count IV). In addition to compensatory damages, Plaintiff

seeks punitive damages with respect to each claim. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant submits that Plaintiff's Complaint must be dismissed with prejudice.

## **MEMORANDUM OF LAW**

### A.  **Legal Standard**

"A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 127 S.Ct. at 1965). Although the pleading standard "does not require 'detailed factual allegations'", it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citing *Twombly*, 127 S.Ct. at 1964-65). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 127 S.Ct. at 1964-65). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citing *Twombly*, 127 S.Ct. at 1966). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citation omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 127 S.Ct. at 1974.

### B.  Applicable Law and Subject Matter Jurisdiction

Incidents occurring on navigable waters and/or bearing a significant relationship to traditional maritime activities are governed by federal maritime law. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989). Here, Plaintiff alleges that the subject incident occurred while she was a passenger on Defendant's cruise ship, Norwegian *Pearl*. U.S. maritime law governs this lawsuit.

This matter is before the court pursuant to 28 U.S.C. § 1333, admiralty and maritime jurisdiction. *See* [D.E. 1, ¶5]. This court does not have diversity jurisdiction as both Plaintiff and Defendant are aliens.

### C.  Counts I & II:  Negligence

Counts I and II of Plaintiff's Complaint allege claims of negligence against Norwegian under theories of vicarious and direct liability, respectively. These counts warrant dismissal as a shotgun pleading and because Plaintiff fails to state a valid cause of action.

#### 1.  Shotgun Pleading

From a procedural standpoint, Plaintiff's negligence counts should be consolidated and/or clarified; the separately pled vicarious and direct liability claims overlap in their allegations and constitute a clear example of  a "shotgun pleading", failing to provide reasonable clarity as to how each theory of liability is distinct and/or distinguishable from the other.

Fed. R. Civ. P. 10(b) states: "If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense." "Moreover, the failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading' that violates

Rule 8(a)(2)." *Johnson v. Carnival Corporation*, Case No. 19-cv-23167-BLOOM/Louis, 2020 WL 128179 at *2 (S.D. Fla. 2020) (citation omitted). "Shotgun pleadings fail to make the connection between 'the substantive count and the factual predicates…[such that] courts cannot perform their gatekeeping function with regard to the averments of [the claim].'" *Id.* (citation omitted). The Eleventh Circuit has identified various types or categories of "shotgun pleadings"; "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (footnote omitted).

In Count I, Plaintiff enumerates alleged negligent acts and omissions committed by and/or on the part of the vessel's crew that render Norwegian *vicariously* liable for the subject incident [D.E. 1, ¶37(a)-(cc)]. In Count II, which begins with a restatement – *verbatim* - of the first five paragraphs of Count I[1], Plaintiff enumerates alleged negligent acts and omissions committed by Norwegian that render it *directly* liable for the incident. [¶46(a)-(g)]. However, the seven proffered ways in which Norwegian was allegedly directly negligent *simply mirror* the ways in which it was allegedly vicariously negligent vis-a-vis the very same conduct and incident.

For example, in Count II (direct liability), Plaintiff alleges that "Norwegian **failed to adopt reasonably careful protocols, policies and procedures for providing security services to minor passengers in a bar environment**." [D.E. 1, ¶46(a)] (emphasis added). In Count I (vicarious liability), Plaintiff proffered the *same exact allegation*, claiming that "Norwegian through its crewmembers at all material times **failed to implement reasonably careful protocols, policies and procedures for providing security services to minor passengers in a bar**

---

[1] Compare [¶¶41-45] to [¶¶32-36].

**environment**." [¶37(i)] (emphasis added). Similarly, in Count II (direct liability), Plaintiff alleges that "Norwegian at all material times **failed to employ, furnish or deploy adequate numbers of competently trained and credentialed crew members for supervising shipboard programming for adolescents**." [¶46(b) & ¶46(d)] (emphasis added). In Count I (vicarious liability), Plaintiff proffered the *same essential allegation(s)*, claiming that "[t]here were an **inadequate number of crewmembers to supervise adolescents onboard and at Entourage**" [¶37(a)], "**[c]rewmembers supervising adolescents** onboard and at Entourage were **inadequately trained to perform their duty of supervision**" [¶37(b)], and "**[c]rewmembers supervising adolescents** onboard and at Entourage were **not sufficiently experienced in supervising adolescent and youth programming**" [¶37(c)].

As these examples clearly illustrate, Plaintiff's separate negligence counts are completely conflated with one another; Count II alleges *the very same bases* for holding Norwegian *directly* liable for the subject incident as Count I asserts in seeking to hold it *vicariously* liable based on the *very same conduct*[2]. This poorly veiled attempt to get multiple "bites at the apple" represents a clear and conspicuous sign of a shotgun pleading.

Notably, in recently granting a cruise line's motion to dismiss an injured cruise passenger's Complaint, a court in this very district cited the propensity of Plaintiff's current counsel for employing shotgun pleadings. In *Johnson v. Carnival Corporation*, the Court admonished current counsel for doing so, stating: "[a]t the outset, the Court notes that Plaintiff's counsel have already been advised multiple times in several cases about the disfavor with which the courts in this District

---

[2] For the sake of brevity, Defendant has only provided two examples of such conflation; additional evidence can be found by comparing the following allegations from Counts I and II: (1) [¶46(c)] vs.[¶37(m)]; (2) [¶46(e)] vs. [¶37(b)]; (3) [¶46(f)] vs. [¶37(h), ¶37(i), & ¶37(cc)]; (4) [¶46(g)] vs. [¶37(j) & ¶37(k)].

and Circuit view shotgun pleadings. The Eleventh Circuit has repeatedly and unequivocally condemned shotgun pleadings as a waste of judicial resources. 'Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's para-judicial personnel and resources. Moreover, justice is delayed for the litigants who are 'standing in line,' waiting for their cases to be heard.'" Case No. 19-cv-23167-BLOOM/Louis, 2020 WL 128179 at *2 (S.D. Fla. 2020) (quoting *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356-57 (11th Cir. 2018) (citation omitted)). The Court further noted that "Plaintiff's counsel has had at least seven complaints in maritime personal injuries cases stricken or dismissed on the basis that they constitute shotgun pleadings. Rather than constituting the 'preferences of one judge,' which are not 'rules of civil procedure or even local rules of this district,' as Plaintiff contends, the orders in these cases are the Court properly applying federal pleading standards. Moreover, each Court has repeatedly determined that Plaintiff's counsel's complaints fail for the exact same reasons." *Id.* (internal citations omitted)[3].

In the case at bar, Plaintiff utilizes essentially identical allegations and factors to assert that Norwegian is both vicariously liable for the alleged negligent acts and omissions of its crewmembers and directly liable for the very same actions and/or inaction. However, Norwegian, as an entity, _can only act through its employees_ for all intents and purposes. Alleging negligence against Norwegian both directly and vicariously is therefore redundant. In doing so, Plaintiff fails

---

[3] For the Court's reference, the Complaints referred to in *Johnson* are: (1) *Noon v. Carnival Corp.*, Case No. 1:18-cv-23181-KMW, ECF Nos. [12], [23]; (2) *Elliott-Savory v. Royal Caribbean Cruises LTD.*, Case No. 1:19-cv-23662-RNS, ECF No. [4]; (3) *Humphreys v. Carnival Corp.*, 1:18-cv-24783-RNS, ECF No. [5]; (4) *Lucas v. Royal Caribbean Cruises, LTD.*, 1:19-cv-20914-RNS, ECF No. [5]; (5) *Corgiat v. Carnival Corp.*, 1:19-cv-20577-RNS, ECF No. [4]; (6) *Ortega v. Royal Caribbean Cruises, Ltd.*, 1:19-cv-22453-RNS, ECF No. [5].

to provide adequate notice of the distinct grounds upon which each individual negligence claim rests and thus precludes Defendant from being able to frame a responsive pleading. As pled, the allegations render it impossible to ascertain the distinct bases for each theory of negligence liability. Plaintiff's Complaint clearly constitutes a shotgun pleading and must be dismissed.

### 2.  <u>Failure to State a Valid Cause of Action</u>

From a substantive perspective, Plaintiff's negligence claims warrant dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted. Plaintiff's claims for vicarious and direct negligence liability: (1) impose a broader duty of care than that which is mandated under accepted and established federal maritime principles; (2) lack sufficient factual support and necessary allegations to establish a breach of Defendant's duty of care; and (3) fail to establish the plausibility that the assailant's intervening criminal conduct was foreseeable.

In analyzing a maritime tort case, courts rely upon general principles of negligence law. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (citing *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). In such cases, a carrier by sea "is not liable to passengers as an insurer, but only for its [own] negligence." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)). "To plead negligence, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro*, 693 F.3d at 1336 (citation omitted).

In terms of the duty owed, "a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec*, 358 U.S. at 630 (citations omitted). "[T]he benchmark against which a shipowner's behavior must be

measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where…the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989).

With specific regard to assault-based negligence claims in the maritime context, courts in this district have recognized that "[w]here an attack on a passenger is carried out by a non-crewmember, such as a criminal intruder or a fellow passenger, courts apply the standard of ordinary care under the circumstances to determine whether the cruise line should be held liable." *Doe v. Royal Caribbean Cruises, Ltd.*, No. 11-23323-CIV, 2011 WL 6727959 at *2 (S.D. Fla. 2011) (citation omitted). "Under this standard, 'a party may be liable in negligence for intervening criminal acts if the acts are foreseeable.'" *Id*. (citation omitted); *see also H.S. v. Carnival Corporation*, Case No. 16-20331-CIV-KING, 2016 WL 6583693 at *3 (S.D. Fla. 2016) (citing *Bullock v. Tamiami Trail Tours, Inc.*, 266 F.2d 326, 331 (5th Cir. 1959)) ("Additionally, with respect to the causation element, where an intervening criminal act is the cause of a plaintiff's injury, carriers may only be liable in negligence where the intervening criminal act was foreseeable."). "Where the intervening act is a criminal act of a third party, and because a person usually has no reason to foresee the criminal acts of another, the criminal act generally breaks the chain of causation and thus the original negligence of the defendant cannot be the proximate cause of the injury resulting from the intervening criminal act." *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981) (citations omitted).

In Counts I and II for vicarious and direct negligence liability, the Complaint alleges that Norwegian owed Plaintiff "a duty of reasonable care *for [her] safety and security*." [D.E. 1, ¶33,

¶42; emphasis added], citing *Kermarec v. Compagnie Generale Transatlantique* in support of this proposition. However, *Kermarec* does not impose a specific duty on a ship owner to protect a passenger's "*safety and security*". Instead, *Kermarec* simply provides that a ship owner must "exercis[e] reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec*, 358 U.S. at 630. Similarly, the Eleventh Circuit has held that "the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances". *Keefe*, 867 F.2d at 1322. In neither case did the court reference a ship owner's specific duty with respect to passenger safety and/or security. In fact, the Eleventh Circuit has specifically recognized that a ship owner is not liable to passengers as an insurer of their safety. *Kornberg*, 741 F.2d at 1334. Thus, Norwegian's only duty with respect to Plaintiff here was the general duty to exercise ordinary reasonable care under the circumstances. Defendant had no specific duty with respect to Plaintiff's safety and security.

In the Complaint's "Preliminary Liability and Damage Allegations Common to all Counts" [D.E. 1, ¶¶10-31], Plaintiff lays out the factual allegations upon which the negligence claims are based. A close look at these allegations reveals that they are lacking in key elements of factual support necessary to render the claims plausible beyond a speculative level.

Plaintiff alleges that on the date of incident, an adult male passenger, Shawn Lu (hereafter, "Lu"), whom she estimated to be approximately thirty years old, approached her in the pool area and "initiated a brief conversation". [D.E. 1, ¶19]. There is no indication and/or allegation that this brief conversation was sexual and/or inappropriate in nature, that Lu was aware of Plaintiff's status as a minor, or that Plaintiff made him aware of her minority.

Later the same day, Plaintiff allegedly asked her parents for permission to attend "a youth pool party" hosted by the Entourage teen club on Deck 12. [D.E. 1, ¶20]. The Complaint alleges

that "[t]he pool party was advertised as limited, like other Entourage programming, to teenagers between the ages of 13-17." *Id*. However, Plaintiff fails to allege that, or specify if, the pool and/or pool area was closed off to all guests except for the teen pool party participants or whether the party was held in the midst of the ship's general passengers (i.e. who were also free to be present in the general pool area)[45].

This distinction is crucial, as the Complaint proceeds to allege that at the pool party, Lu approached Plaintiff again "despite appearing to be approximately 30 years old". [D.E. 1, ¶22]. If the age-restricted party was taking place at a time when the ship's general guests were permitted to be present and utilize the pool/pool area as well – even if these other guests were not permitted to participate in the actual activities of the party itself – then Lu's presence in the pool area raises no issue. As pled, the Complaint requires pure speculation as to whether Lu's presence in the area was unauthorized. Assuming, for a moment, that other guests were allowed to be present in the area and were simply not permitted to participate in the pool party itself[6], there is no indication that mere conversations between the party's participants and non-participants were prohibited – even if actual *participation* in the party was age-restricted. In turn, there is no basis to allege that those crewmembers supervising the party were negligent by allowing Lu to merely converse with

---

[4] In other words, whether the pool area on Deck 12 was strictly closed off to all guests not participating in the youth pool party, or whether other guests were permitted to be present in the pool area (i.e. swim, lounge, etc.) and were just not permitted to participate in the activities of the party itself.

[5] Plaintiff references the "'Freestyle Daily' info pamphlet" from the date of incident, attached as Exhibit "C" to the Complaint (*see* [D.E. 1-3]). The information provided in the pamphlet simply indicates that participation in the pool party was limited to participants ages 13-17; there is no indication that the pool and/or pool area was generally closed off to all other guests.

[6] An assumption that is made possible by the lack of specificity and clarity in the factual allegations.

Plaintiff. This is especially true in the absence of any allegation that the substance of the conversation between Lu and Plaintiff was sexual and/or otherwise inappropriate in nature.

During this conversation, Lu allegedly invited Plaintiff "to leave the supposedly supervised teen party". [D.E. 1, ¶22]. Notably, Plaintiff fails to allege or provide any factual support to indicate that the teen club participants were not free to leave the party at any point if they so desired, and/or that they required permission to do so. There is no indication that the supervising crew members would have been negligent in allowing Plaintiff to leave the party.

Plaintiff claims that after leaving the pool area, she and Lu proceeded to an onboard bar on Deck 7. [D.E. 1, ¶22]. The Complaint alleges that Plaintiff's status as a minor was or should have been known to Norwegian's crew members at the bar because "underage passengers on the ship were given wristbands by Norwegian identifying them as minors" and thus prohibiting them from purchasing or consuming alcohol. [¶23, ¶24]. However, Plaintiff fails to allege that she was *actually wearing the wristband* at or near the time of the subject events, including during her time at the bar. Although she claims that four alcoholic beverages were "delivered to [her] by the Norwegian crewman without any attempt to verify her age by checking her room card or wristband or otherwise" [¶24], the simple facts are: (1) these drinks were purchased by Lu – an adult (i.e. not Plaintiff), *Id*.; and (2) Plaintiff has not alleged that she physically appeared to be underage such that the server(s) would have had reason to verify her status.

Significantly, the Complaint contains no allegation(s) as to the details of any interaction between Plaintiff and Lu at the bar; there is no suggestion or indication that Lu was being sexually aggressive towards Plaintiff, making sexual advances towards Plaintiff, acting in a threatening manner towards Plaintiff, or otherwise acting inappropriately towards her. Thus, although Plaintiff alleges that by the time she and Lu left the bar, she was "already highly intoxicated" [D.E. 1, ¶25],

there is no basis to plausibly conclude that the eventual assault was foreseeable based on what was observed or what should have been observed. *See H.S. v. Carnival Corporation*, Case No. 16-20331-CIV-KING, 2016 WL 6583693 at *3 (S.D. Fla. 2016) (dismissing minor passenger's similar sexual assault-based negligence claim against cruise line, holding: "the Complaint falters where it purports to allege facts plausibly showing the breach of duty was the proximate cause of Plaintiff's injury, or that the criminal act by which Plaintiff was harmed was foreseeable based upon what Carnival observed or should have observed.").[7]

Plaintiff alleges that after leaving the bar, Lu directed her to a locker room in the fitness center where they had sexual intercourse. He then took her back to the teen pool party. [D.E. 1, ¶26, ¶27]. The Complaint alleges that "[t]he improper contact between Lu and C.W. continued in public spaces upon the ship, specifically the pool area, Bliss Bar, and other areas traversed between those locations". [¶28]. However, the Complaint provides insufficient factual clarity and specificity to illuminate its definition of "improper contact". The interaction between Plaintiff and Lu at the pool party was described as them merely being "engaged in conversation". [¶22][8]. The Complaint contains no allegation of physical contact between the two at the onboard bar. *See* [¶24,

---

[7] Here, not only is there no allegation that any of the crewmembers in the bar *actually observed* that Plaintiff was intoxicated by the time she and Lu left together and failed to act (which would go to the "breach" element), but the allegations do not lead to the plausible conclusion that Plaintiff was in foreseeable danger when they left the bar based on any observable prior interaction between the two.

[8] Defendant points out that although Plaintiff asserts that her status as a minor was or should have been known to Lu "because he approached her at a party specifically organized for adolescent passengers" [D.E. 1, ¶23], there is no allegation – and no factual support for the proposition – that Lu *knew* the nature of the party and/or that it was specifically organized for minor teenage passengers. There is also no allegation: (1) that Plaintiff ever specifically made Lu aware of her age (i.e. minority); (2) that Plaintiff was actually wearing the wristband given to underage passengers to designate their minority; (3) that Lu would have known what this wristband signified even if she was wearing it; or (4) that Lu ever saw Plaintiff's room card identifying her as a minor. *See* [¶23].

¶25]. Plaintiff claims that after they left the bar, she was led to a locker room in the fitness center where the actual intercourse took place. There is no factual indication that any "improper contact" took place between the time they left the bar and when they entered the locker room.

Significantly, although Plaintiff alleges that the vaguely-defined "improper contact" between she and Lu "continued in public spaces…for a sufficient period of time so that Norwegian crewmembers had sufficient opportunity to observe the activity and intervene to prevent…the ensuing sexual assault" [D.E. 1, ¶28], there are no facts provided to suggest that Lu was making sexual advances towards Plaintiff which were being rebuffed such that Norwegian's crew members would have foreseen that she was in impending danger. *See Doe v. Royal Caribbean Cruises, Ltd.,* No. 11-23323-CIV, 2011 WL 6727959 at *4 (S.D. Fla. 2011) (the court held that a passenger who claimed she was sexually assaulted by another passenger stated a valid cause of action for negligence against the cruise line, in part, because she alleged that the ship's personnel saw her "staggering through the vessel in a state of obvious intoxication and *repeatedly rebuffing attempts by her assailant to get her to enter the men's bathroom*." (emphasis added). The court found that what the crew members observed "could plausibly put a reasonable defendant on notice of the impending danger to the plaintiff.").

From the facts and allegations pled, there is simply no plausible basis to conclude that Norwegian's crew members should have known that Plaintiff was in any impending danger based on what was or could have been observed during the course of any interaction between Plaintiff and Lu. There is no plausible basis to conclude - from the (unsubstantiated) allegation that Norwegian's crew members "failed to maintain adequate video surveillance" [D.E. 1, ¶37(o)] and "failed adequately to monitor the video surveillance" [¶37(p)] - that Defendant's crew members could have foreseen that Plaintiff was in imminent danger even if they observed everything that

Plaintiff alleges to have occurred in public spaces[9]. The sexual assault of Plaintiff clearly constitutes an unforeseeable, intervening criminal act that breaks the causal link between any alleged negligence on the part of Norwegian and/or its crew members (which Defendant disputes) and Plaintiff's injuries and damages. As such, the negligence claims must be dismissed.

### D.  Fraud by Concealment

In Count III, Plaintiff alleges that Norwegian knowingly and deliberately concealed and/or failed to disclose to passengers the purported risk of sexual assault and misconduct on its vessels both generally and with respect to minors. Plaintiff's claim of fraud by concealment warrants dismissal because Plaintiff does not sufficiently plead the requisite elements of this cause of action and fails to satisfy the heightened pleading standard for fraud-based claims.

To state a claim for fraudulent concealment, "a plaintiff must allege facts sufficient to establish the following: (1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known that the material fact should be disclosed; (3) the defendant knew its concealment of the fact would induce the plaintiff to act; (4) the defendant had a duty to disclose the material fact; and (5) the plaintiff relied on the misrepresentation to his or her detriment." *Koski v. Carrier Corporation*, 347 F.Supp.3d 1185, 1196 (S.D. Fla. 2017) (citing *Aprigliano v. American Honda Motor Co., Inc.*, 979 F.Supp.2d 1331, 1342 (S.D. Fla. 2013) (Altonaga, J.)).

A fraudulent concealment claim "is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Koski*, 347 F.Supp.3d at 1196 (citing *Aprigliano*, 979 F.Supp.2d at 1341-42). Per Fed. R. Civ. P. 9(b), "[i]n alleging fraud or mistake, a party must state

---

[9] Defendant notes that Plaintiff does not allege that any physical contact between she and Lu was forced/forceful or non-consensual such that anyone observing such interaction in person or through video surveillance would have foreseen that she was in danger.

with particularity the circumstances constituting fraud or mistake." "To meet this standard, a complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud." *Koski*, 347 F.Supp.3d at 1197 (citing *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F.App'x 81, 86 (11th Cir. 2008)). "'The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.'" *Koski*, 347 F.Supp.3d at 1196 (quoting *W. Coast Roofing & Waterproofing, Inc.*, 287 F.App'x at 86). "When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, [grounded on] baseless allegations used to extract settlements." *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-Civ, 2012 WL 2049431 at *3 (S.D. Fla. 2012) (citation omitted).

Here, Plaintiff vaguely asserts that "from at least 1999" through the date of the alleged subject incident, Norwegian knowingly and deliberately concealed and failed to disclose to its passengers – including Plaintiff - "the true risk and incidence of sexual assault or sexual misconduct aboard its vessels, both with regard to passengers in general and minor passengers in particular." [D.E. 1, ¶53]. Plaintiff claims that this was accomplished via marketing campaigns, website representations, and congressional testimony wherein Norwegian "knowingly and falsely represented that cruising in general was safe, that cruising activities dedicated for minors were safe, that sexual assault or misconduct aboard its cruise vessels was uncommon, and that

Norwegian had zero tolerance for such misconduct." *Id*. Plaintiff further alleges some sort of conspiratorial effort in which, "in concert with other cruise lines, [Norwegian] engaged in a coordinated disinformation campaign concerning the true security risks and incidence of sexual misconduct aboard cruises" through statements made by the Cruise Line International Association (CLIA). [¶54]. According to the Complaint, CLIA "falsely publicly represented that cruising was safe and the incidence of sexual assault or misconduct during cruises was low". *Id*.

Plaintiff's fraudulent concealment claim is insufficiently pled for numerous reasons. First, Plaintiff fails to adequately allege that Norwegian's purported "cover-up" involved the concealment of material *facts*. The Complaint asserts that Norwegian concealed the alleged risk of sexual assault on its vessels and instead represented to passengers - through various channels - that cruising was *safe*, that cruising activities dedicated for minors were *safe*, and that sexual assault aboard its cruise vessels was *uncommon* [D.E. 1, ¶53]. These representations, taken as true (i.e. if proffered by Norwegian), clearly constitute broad-based generalities not intended as strict representations of *fact* or exceptionless guarantees. This distinction is lent credence by the well-established maritime principle that "[a] carrier by sea [ ] is not liable to passengers as an insurer [of their safety], but only for its negligence." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)). In this count, Plaintiff alleges fraud, not negligence, and any purported representations by Norwegian regarding the *general safety* of cruising both overall and/or as pertaining to minor passengers simply does not constitute an actionable, factual guarantee. *See Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F.Supp.2d 1334, 1342 (S.D. Fla. 2012) (alleged misrepresentations made by the defendant cruise line on its website were no more than "non-actionable puffery and sales talk" not intended to be interpreted strictly and/or literally).

Second, while Plaintiff alleges that Norwegian concealed the purported risk of sexual assault aboard its vessels and that Plaintiff's father relied on Norwegian's representations of safety in booking the cruise and registering Plaintiff for the teen program [D.E. 1, ¶55, ¶56], Plaintiff fails to allege that Norwegian *knew its concealment would induce Plaintiff to act*.

Third, Plaintiff's fraud-based allegations fail to satisfy the "particularity" requirement of Fed. R. Civ. P. 9(b) as interpreted by courts in this district and the Eleventh Circuit. While the Complaint claims that Norwegian concealed the purported risk and incidence of cruise-related sexual misconduct through "marketing campaigns", "representations on its website", "publicized testimony…to Congress" [D.E. 1, ¶53], and "statements made by…the Cruise Line International Association" [¶54], it fails to identify with sufficient particularity any of the precise statements, representations, and/or testimony being referenced. *See H.S. v. Carnival Corporation*, Case No. 16-20331-CIV-KING, 2016 WL 6583693 at *4 (S.D. Fla. 2016) (dismissing passenger's similarly-grounded fraudulent concealment claim against cruise line due to lack of particularity; "Plaintiff's fraudulent concealment claim is grounded on Carnival's alleged knowledge and deliberate concealment of the fact that sexual assaults against passengers are a recurring problem on its ships. Indeed, the Complaint alleges that Carnival's 'marketing campaigns' and 'other representations' falsely state that cruising is 'safe' and that sexual assaults are 'uncommon.' However, the Complaint does not allege the time or place these allegations were made…Upon consideration, it is plain that these allegations are insufficient to meet the particularity requirements for pleading fraud claims".).[10]

---

[10] In the case at bar, Plaintiff similarly fails to provide sufficient particularity as to the time, location, and/or context/substance of any purported representation(s) of "safety" made by Norwegian; e.g., the Complaint vaguely – and without any factual support - claims that Norwegian's alleged concealment occurred "from at least 1999" through the date of the subject incident. [D.E. 1, ¶53].

Finally, and most significantly, Plaintiff's fraudulent concealment claim is meritless on its face. First, the existence of publicly available data – based on mandatory reporting requirements - regarding the incidence of sexual assaults on cruise ships demonstrates that Norwegian does not conceal such information. In his concurring opinion in *K.T. v. Royal Caribbean Cruises, Ltd.*, Eleventh Circuit Chief Judge Carnes specifically noted the existence of publicly available data regarding sexual assaults on cruise ships, stating: "[s]ince 2010 cruise lines have been required to keep records of all complaints about certain crimes – including sexual assault and rape – that occur aboard any of their ships during a cruise 'that embarks or disembarks passengers in the United States.' Cruise lines must report those complaints to the FBI and the Department of Transportation. The DOT has a statutory duty to compile the reports and publish quarterly 'statistical compilation[s]' about certain crimes – including sexual assault and rape – that occur on board cruise vessels. Those compilations are called Cruise Line Incident Reports. Cruise Line Incident Reports, U.S. Dep't Transp., https://www.transportation.gov/mission/safety/cruise-line-incident-reports (last updated Apr. 17, 2019)." 931 F.3d 1041, 1047 (11th Cir. 2019) (citations omitted). As Chief Judge Carnes stated, cruise lines, including Norwegian, have been required for the past decade to keep records of – and report – the occurrence of sexual assaults on their vessels, and the Department of Transportation has been statutorily required to publish public reports containing statistical compilations of such occurrences. Thus, Norwegian can hardly be accused of concealing such information.

Moreover, Norwegian's public website[11] (https://www.ncl.com) contains a page titled "Safety and Security Information". *See* Norwegian Website: "Safety and Security Information",

---

[11] Although outside the "four corners of the Complaint", Defendant references Norwegian's website in response to Plaintiff's invocation of the website and its content in her pleading. *See,*

attached hereto as Exhibit "A". On this page, under a section titled "Additional Information", Norwegian conspicuously provides a link titled "US Department of Transportation". Upon clicking on this link, users are taken to a page titled "Cruise Line Incident Reports", containing each and every Cruise Line Incident Report published by the Department of Transportation since the record-keeping and reporting requirements went into effect in 2010. *See* <u>Norwegian Website: "Cruise Line Incident Reports"</u>, attached hereto as Exhibit "B". As Chief Judge Carnes noted, these publicly available reports contain data regarding certain crimes – *including sexual assault* – that have occurred on cruise ships during the specified periods from January 2010 until the present. Users are able to open and review these reports at any time. In providing prospective passengers with free and easy access to these reports on its own website, Norwegian does anything but conceal information regarding sexual assaults as alleged by Plaintiff.

In light of the reporting requirements, the public availability of pertinent information, and the information freely and openly provided on Norwegian's own website, Plaintiff's allegation of fraudulent concealment is meritless on its face. Count III must be dismissed.

### E. <u>Count IV:  Negligence *Per Se*</u>

Count IV alleges negligence *per se* against Norwegian based on the purported violation of federal maritime statutes governing passenger vessel safety and security. This claim warrants dismissal because: (1) Plaintiff fails to allege the purported statutory violation(s) with enough particularity and/or specificity to maintain a valid cause of action; and (2) this count can be sufficiently subsumed by the other negligence claim(s); it need not be pled as a separate and independent cause of action.

---

e.g., [D.E. 1, ¶15]. In Count III for Fraud by Concealment, Plaintiff specifically adopts, re-alleges, and incorporates by reference the allegation(s) of ¶15 into this count. *See* [¶50].

"Negligence *per se* is the violation of a statute 'which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury.'" *Skye v. Maersk Line*, Case No. 11-21589-CIV-ALTONAGA/Simonton, 2011 WL 13114093 at *3 (S.D. Fla. 2011) (quoting *N. Ins. Co. of N.Y. v. Pelican Point Harbor, Inc.*, No. 3:05cv184, 2006 WL 1285078 at *8 (N.D. Fla. 2006)). "[T]he elements of negligence per se are: (1) violation of a regulation; (2) causing the type of harm that the regulation was intended to prevent; and (3) injury to a member of the class of persons intended to be protected by the regulation." *Mordechaev v. Jet Ski Exotics, LLC*, Civil Action No. 16-23867-Civ-Scola, 2017 WL 7794296 at *2 (S.D. Fla. 2017) (quoting *Lemma Ins. (Europe) Co. v. Rumrunner Sport Fishing Charters, Inc.*, No. 8:11-CV-2110-T-33TBM, 2012 WL 254134 at *2 (M.D. Fla. 2012)).

In Count IV, Plaintiff states that, per 46 U.S.C. § 30102, the owner and master of a vessel are liable for personal injury to a passenger "caused by the neglect or failure to have competent security on the vessel." [D.E. 1, ¶62][12]. The Complaint then asserts that a violation of part B of subtitle II gives rise to liability for "failure to comply with the relevant rules and regulations promulgated pursuant to those statutes." [¶63]. Plaintiff identifies "those statutes" as sections 3507 and 3508 contained within part B of subtitle II. [¶64]. Without even cursorily addressing their actual content or the substance of the specific provisions contained therein, Plaintiff simply states that sections 3507 and 3508 concern "Passenger Vessel Security and Safety Requirements" and "Crime Scene Preservation Training for Passenger Vessel Crewmembers", respectively (codified as part of the Cruise Vessel Security and Safety Act of 2010 (CVSSA)). [¶64]. After referencing these statutes merely by title, Plaintiff conclusively alleges: (1) "Norwegian failed to meet the

---

[12] The precise wording of 46 U.S.C. § 30102, in pertinent part, states: "The owner and master of a vessel, and the vessel, are liable for personal injury to a passenger or damage to a passenger's baggage caused by – (1) a neglect or failure to comply with part B or F of subtitle II of this title".

minimum standards required under the CVSSA because the security staff employed on board the M/S Pearl were incompetent and failed to act within generally accepted law enforcement and security guidelines, policies and procedures regarding prevention of sexual assaults and protection of minor passengers, and were thus negligent" [¶66]; and (2) "Plaintiffs are within the class of persons intended to be protected by these statutes, fare paying cruise vessel passengers." [¶65].

By merely referencing sections 3507 and 3508 by title without providing any meaningful insight into their content and/or identifying any specific provisions therein, Plaintiff does not connect the alleged failure on the part of the ship's security staff to any supposedly violated provisions of these statutes. Plaintiff asserts that Norwegian "fail[ed] to comply with the relevant rules and regulations promulgated pursuant to those statutes" yet fails to identify any of the specific, purportedly relevant rules and regulations that Norwegian failed to comply with. Similarly, Plaintiff claims that Norwegian "failed to meet the minimum standards required under the CVSSA" yet gives no indication as to what such standards are. Without doing so, the allegation that the security staff "were incompetent and failed to act within generally accepted law enforcement and security guidelines, policies and procedures" amounts to nothing more than a purely legal conclusion. Likewise, by conclusively alleging that C.W. – as a cruise passenger – was within the class of persons intended to be protected without providing any meaningful insight into the statutes' content, Plaintiff renders this assertion a purely legal conclusion. Essentially, Plaintiff has done nothing more than identify a regulation(s) and claim that Norwegian violated it; the Complaint provides no specificity whatsoever as to what aspect of the regulation(s) was violated as to allow Defendant to respond in a meaningful way. For this reason, Plaintiff's claim should be dismissed. *See Skye v. Maersk Line*, 2011 WL 13114093 at *3 (S.D. Fla. 2011) (Altonaga, J.) (this Court dismissed an injured plaintiff's negligence *per se* claim against a ship

owner by holding: "Plaintiff, _in conclusory fashion_, asserts Defendant committed negligence _per se_ because Defendant allegedly violated certain federal statues (sic) and regulations…He further asserts the violations caused his injuries. Nonetheless, Plaintiff _fails to allege any facts_ in support of his negligence _per se_ claim. Instead, he asserts only _legal conclusions_…The broad-brush conclusions of the negligence _per se_ claim merely state that Defendant violated statutes and regulations, and that those violations amount to negligence _per se_. This equates to no more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation,' which is insufficient under Rule 12(b)(6). _Also, the Complaint does not provide Defendant with sufficient notice of what duties it violated in order for Defendant to frame a proper responsive pleading, violating Rule 12(e)_." (emphasis added; citations omitted)).

Count IV further warrants dismissal because the alleged violation of federal maritime safety statutes (characterized as negligence _per se_) does not give rise to a separate and independent cause of action; such alleged statutory violation is properly pled as evidence of general negligence. As this Court held in _Skye v. Maersk Line, Ltd. Corp._, "[c]ase law supports this. Courts tend to disfavor pleading negligence _per se_ as a separate claim because it is not deemed to be independent from general negligence. Rather, negligence _per se_ is 'the application of an evidentiary presumption whereby a plaintiff can satisfy the duty and breach elements of a general negligence claim as a matter of law.'" No. 11-21589-CIV, 2011 WL 4528305 at *2 (S.D. Fla. 2011) (Altonaga, J.) (citations omitted). In opting to dismiss the plaintiff's negligence _per se_ claim, this Court stated: "To that end, Plaintiff's negligence _per se_ claim can be sufficiently subsumed by Claim I, the Jones Act negligence claim. Accordingly, Plaintiff's negligence _per se_ claim is dismissed." _Id_. Here, since Plaintiff has already brought general negligence claims against Norwegian (Counts I and II), the claim for negligence _per se_ should be similarly dismissed.

### F.  **Punitive Damages**

In each of the four counts alleged in the Complaint, Plaintiff pleads an entitlement to punitive damages. *See* [D.E. 1, ¶40, ¶49, ¶60, ¶68]. However, recent decisions from the Eleventh Circuit and the U.S. Supreme Court make the unavailability of punitive damages in personal injury-based passenger maritime claims clear. In *Eslinger v. Celebrity Cruises, Inc.*, the Eleventh Circuit court stated: "Our court has held that plaintiffs may not recover punitive damages…for personal injury claims under federal maritime law." 772 Fed.Appx. 872, 872 (Mem) (11ᵗʰ Cir. June 28, 2019) (citations omitted). Only days prior to the *Eslinger* decision, the U.S. Supreme Court rejected an attempt to expand maritime law so as to authorize punitive damages claims, finding that "[t]he lack of punitive damages in traditional maritime law cases is practically dispositive." *The Dutra Group v. Batterton*, 139 S.Ct. 2275, 2284 (June 24, 2019).

This Honorable Court affirmed these principles in *Doe v. NCL (Bahamas) Ltd.*, Case No. 19-21486-CIV-ALTONAGA/Goodman (S.D. Fla. 2019). In *Doe*, a minor cruise passenger alleged that she was sexually assaulted by the defendant's cabin steward and filed a multi-count Complaint against the cruise line pursuant to federal maritime law. The plaintiff sought punitive damages with respect to each count. This Court, citing the *Eslinger* decision from the Eleventh Circuit, struck down the plaintiff's punitive damages claim. *See* Order on Defendant's Motion to Dismiss [D.E. 45], attached hereto as Exhibit "C", striking the plaintiff's claim for punitive damages; *see* pertinent excerpts from Transcript of Motion Hearing on Defendant's Motion to Dismiss [D.E. 52], attached hereto as Exhibit "D", containing a discussion of the plaintiff's punitive damages claim and laying out this Court's reasoning for striking it down (with portions highlighted for ease of reference). Because Plaintiff's personal injury-based claims here are governed by federal maritime law, Plaintiff cannot maintain claims for punitive damages in the Eleventh Circuit and/or

per the ruling of the United States Supreme Court. Plaintiff's claim for punitive damages must be stricken/dismissed.

### G.  Conclusion

WHEREFORE, Defendant, NCL (BAHAMAS) LTD., d/b/a NORWEGIAN CRUISE LINE, respectfully requests that the Court enter an Order granting its Motion to Dismiss Plaintiff's Complaint, with prejudice, and granting any and all further relief deemed just and proper.

Dated:  February 6, 2020
       Miami, Florida

Respectfully submitted,

**FOREMAN FRIEDMAN, P.A.**

BY: **/s/ Avi C. Shoham**
    Avi C. Shoham, Esq. (FBN 1005219)
    ashoham@fflegal.com
    Jeffrey E. Foreman, Esq. (FBN 0240310)
    jforeman@fflegal.com
    Darren W. Friedman, Esq. (FBN 0146765)
    dfriedman@fflegal.com
    One Biscayne Tower, Suite 2300
    2 South Biscayne Boulevard
    Miami, FL  33131
    Tel: 305-358-6555/Fax: 305-374-9077
    *Counsel for Defendant*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this 6th day of February, 2020. I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

By: /s/ Avi C. Shoham
    Avi C. Shoham, Esq.

## SERVICE LIST
CASE NO.: 19-24441-CIV-ALTONAGA/Goodman

Philip M. Gerson, Esq.
pgerson@gslawusa.com
filing@gslawusa.com
Edward S. Schwartz, Esq.
eschwartz@gslawusa.com
Nicholas I. Gerson, Esq.
ngerson@gslawusa.com
David Markel, Esq.
dmarkel@gslawusa.com
Raul G. Delgado II, Esq.
rdelgado@gslawusa.com
cbenedi@gslawusa.com
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, FL 33145-2624
Tel: 305-371-6000/Fax: 305-371-5749
*Counsel for Plaintiff*

Darren W. Friedman, Esq.
dfriedman@fflegal.com
sargy@fflegal.com
Avi C. Shoham, Esq.
ashoham@fflegal.com
jmaganani@fflegal.com
alanauze@fflegal.com
Jeffrey E. Foreman, Esq.
jforeman@fflegal.com
FOREMAN FRIEDMAN, PA
One Biscayne Tower – Suite #2300
2 South Biscayne Boulevard
Miami, FL 33131
Tel: 305-358-6555/Fax: 305-374-9077
*Counsel for Defendant*